Care, J.
In deciding on the correctness of the judgment of the circuit court, on the demurrer to the plaintiffs’ replication, we must look back to the defendant’s plea, and inquire whether it is a good one. If it be so, it must be under the provision of the 60th section of the statute of wills, intestacy and distribution; which regulates the course of administration of the estate of a testator or intestate, to whom, in his lifetime, the estate of another decedent had been “ committed by a court of record.” The words of the section are clear and unambiguous, when we take them in connection with the arrangements and provisions of the prior clauses of this same statute. It first declares what courts shall have power to hear and determine controversies testamentary, and to examine and take proof of wills, and grant certificates thereof; namely, the supe *120 riour courts of law, and the county and corporation ... .. . ..... , courts, within their respective jurisdictions: then it prescribes the rules by which they are to be governed; how wills shall be proved, and administration granted; |10W tke executor or administrator shall make oath, and give bond and surety; the form of the condition of this bond is set out at large; and so solicitous is the law, with regard to the security to be given, that it declares, that if any court shall grant a certificate for obtaining administration of a dead person’s estate, without taking good security for the same &c. the justices of the court, then sitting, shall be answerable to the persons injured &c. for all loss occasioned thereby. After all these, and many other provisions, comes this 60th section, providing, in effect, that debts due from executors, to the estates of dead persons, committed to them by any court of record, shall be paid before their own debts. Having the whole scheme of the law before us, we see at once, what is meant, by committing administration by a court of record. It is clear, that the case made by the plea, is not within the literal meaning of the statute; for it needs no argument to prove, that the estate of W. Dowles was never committed to John Turner by a court of record. We must recollect too, that this provision of our statute, is not declaratory of the common law, but in derogation of its principles, and in derogation too of the rights of the fair creditors of the executor himself, a class highly favoured in law. These considerations are stated, as shewing, that we ought not to extend this section beyond cases clearly within its meaning and mischief.
Is the present such a case ? The object of the statute was, that for the true and faithful administration of every dead person’s estate, there should be a bond with good surety executed; and that all debts coming within this bond should be payable before the executor’s own debts. The estate of W. Dowlas was, under *121 this law, committed to his widow, and she executed a bond with good surety for the due administration thereof, whether by herself, or by her agents. This bond was not cancelled by her marriage: it is to this day in full force and effect. Did Turner on his marriage, give any bond as administrator ? No; and there was no occasion for it, unless the sureties bound in her bond had demanded new security, and shewn a proper case for it; because the bond and security given by her comprehended all waste of the estate, whether committed by her before her second marriage, by the second husband during coverture, or by herself after his death. A full administration was committed to her; and she and her sureties are liable for the proper administration of the whole assets. Here, then, is all the security, which the law contemplated, for the waste stated in the plea to have been committed by John Turner, of the estate of W. Bowles; a security under the bond of W. Bowles’s administratrix, not under the bond of John Turner’s executrix.
How is the la,w settled in England, in case of waste done by the husband of a,n executrix ? In Mounson v. Bourn, Cro. Car. 519. the court said,—“ If a man takes an executrix to wife, and. waste the goods, it is a devastavit in the feme;” and Jones said, “if there be a recovery against baron and feme, in the life of the feme, if the harón survive the feme, he shall be charged, and also if the feme survive, she shall be charged; but if the recovery be not against the baron and feme in the life of the feme, and she dies, the baron shall not be charged. and with this Brmnpston, chief justice, agreed. I find, ihe same law laid down in 2 Com. Dig. Baron and Feme. 2 B. 2 C. pp. 237-8. and further it is stated, from a case in 1 Boll. 351. that if there be a judgment against husband and wife as executrix, ut do bonis testatoris, and upon fi. fa. thereupon, the sheriff returns devasta,vit, and. the wile dies before judgment against them de bonis pro *122 priis, the husband shall not be charged” (to which a dubitatur is added, whether by the reporter, or by whom, I do not know). “ So, if there be a judgment against husband and wife as executrix, and the wife dies, debt ¿oeg not pe againS(; the husband, upon a suggestion that he converted the goods of the testator to his own proper usefor which Lutw. 674. is cited. In 4 Vin. Abr. Baron and Feme. E. a. b. pp. 128-9.1 find the law laid down in the same way; and in later books, tire law is considered as so settled; all agreeing, that though the husband of an executrix commit waste, yet if he die before any judgment against him, his estate is discharged at law, there being no form of action in which it can be charged. And this, as a part of the common law, unchanged by any statute of ours, I consider to bo the existing law of the state.
Let us examine what is the effect of this state of the law, upon the plea of the defendant. She is the representative of Martin Turner, one of the sureties to the bond of the executrix of John Turner. Now, we all know, that these sureties being bound by the bond alone, are chargeable only so far as they have undertaken by that bond for the executrix. How far is that? The condition of the bond tells us. They undertake, substantially, that the executrix shall administer the estate according to law, paying the debts and legacies, so far as the goods, chattels and credits extend, and the law shall charge her. Did the law charge the executrix of John Turner to pay the 524 dollars, which he had converted to his own use, of the estate of W. Bowles ? I have shown that it did not, because no devastavit being fixed upon him in his life, his estate was discharged, by the settled course of legal decisions ; and the administratrix of W. Bowles and her sureties were liable. It seems to follow, then, that the sureties of John Turners executrix never undertook for this debt, and are in nowise liable for it. If so, this plea cannot be good, which *123 states it to be a debt for which the sureties not only are liable, but liable in preference to a debt of the highest dignity, due from John Turner himself.
But it is said, that though the estate of John Turner be not chargeable at law, a court of equity will follow it into the hands of his representative, and make her account for the actual amount received by John Turner of the estate of W. Towles. I admit, this is, to the fullest extent, laid down by lord Redesdale, in Adair v. Shaw, 1 Sch. & Lef. 263, 4. and the cases he refers to. But this will not support this plea. For, so far from shewing it to be a debt of the first dignity, and payable before any debt of John Turner’s own, this shews it not even to be a simple contract debt, but a mere equity. Lord Redesdale declares, repeatedly, that there is no remedy at law for such a debt. How then could it stand in the way of a debt due from Turner’s executrix, by judgment against her, falsifying her plea of fully administered, and a fi. fa. on that judgment returned nulla Iona ? But though in equity, the estate of John Turner is liable for as much as he received of the estate of Towles, that equity does not affect, in the slightest degree, the sureties to the bond, which the executrix gave. They have received no part of John Turner’s estate. You can raise no equity against them. They undertook that she should pay the debts and legacies so far as the goods and chattels extended, and the law charged her. The law did not charge her to pay this debt; and we know it is a settled rule, that equity will never charge sureties, further than the law makes them liable. Upon every principle, then, I am of opinion, that this defendant could not defend herself by pleading this waste of John Turner of the estate of Towles ; and that the judgment must be reversed, the special plea of tho defendant and all the proceedings on it set aside, and the cause remanded for further proceedings.
Cabell and Brooke, J. concurred.
*124 Tucker, P.
As I have the misfortune in this case-, to differ from my brethren, I must be permitted to assign at large the considerations which weigh with me. In doing so, I shall not find it necessary to examine the 0kjec¿ons which have been made to the declaration, as I am of opinion, that, without adverting to them, the judgment of the circuit court is clearly sustainable.
The action is instituted upon the administration bond against the administratrix of a surety, and sots forth a judgment and return of nulla bona, obtained against Susan Turner the administratrix of John Turner deceased, a copy of which judgment and execution are produced, though a proferí is not made of the whole proceedings. In the original suit it appears by the pleadings, that the administratrix had pleaded fully administered, which plea was found against her. In this action, the administratrix of the surety being impleaded, offered a plea of a debt of superiour dignity, and no assets prater. Out of this plea and the proceedings which followed thereupon, several important questions arise.
The first is, whether the verdict of the jury, in the action against the administratrix, is conclusive either against her or her surety. With respect to her, I think nothing can be more clear, than that she might have been estopped from pleading such a plea, if the plaintiff had properly made use of the -verdict against her. For there is no principle more clear than that a verdict between the same parties, in relation to the same matter, is usually conclusive if insisted upon by way of estopr pel; as it is unreasonable, that the suitor should be twice vexed with the trial of the same identical question, with the same adversary. Public policy requires, that limits should be opposed to the continuance of litigation upon the same subject matter, and between the same parties litigant; and therefore a matter once solemnly decided by a court of competent jurisdiction, is usually conclusive as to private rights. 1 Stark. Law *125 Ev. part 2. p. 185. The administratrix, therefore, hod 1 1 . tiii she been a party to this action, coaid not have been received to contradict the former verdict that she had assets, provided that verdict was properly used as an ohstacle to the reinvestigation of the matters settled by it. On the other hand, however, it is not less true, as an elementary fule and principle of justice, that no man shall be bound by the act or admission of another, to which he was a stranger; and, consequently, no one ought to be bound as to a matter of private right, by a judgment or verdict to which he was not a party, where he could make no defence, from which he could not appeal, and which may have resulted from the negligence of another, or may even have been obtained by means of fraud and collusion. Id. These principles are stated and enforced with great strength by judge Green, in the case of Munford v. Overseers of the Poor, 2 Rand. 313. in which he examines, in detail, the question how far the sureties in an administration bond, are concluded by a verdict in an action against their principal establishing a devastavit. It is very clear from his argument, that he did not consider them as concluded; and he produces a variety of cases to shew, that the general rule, which protects one from the conclusive operation of a. verdict to which he was no party, embraces this very case of a principal and surety. The justice of this general rule, cannot be called in question, a,nd its generality must, of course, comprehend all cases not shewn to be exceptions to it. The surety, therefore, may well demand that his adversary should produce the adjudication which places him beyond the pale of this salutary principle. If there be any such case I am not aware of it, for I think it is very clear, that the cases of Braxton v. Winslow, 1 Wash. 31. and Greensides v. Benson, 3 Atk. 248. decide no such thing. Referring to judge Green's examination of these cases, which I cannot improve, and which it is unnecessary to transcribe, *126 I shall only point attention, particularly, to the fact, that in Greensides v. Benson, there had been suits against the sureties themselves, and judgments against them j so that the question was not whether they were concluded ky t]ie verdict and judgment against their principal, but whether they could gainsay the judgment obtained against themselves by default. As to the case of Baker, treasurer, v. Preston, Gilm. 235. it turned upon the question of the conclusiveness of the books of the trea sury, and not upon any previous verdict or judgment against the principal, though judge Roane relied on the two cases just cited, to sustain his opinion. That opinion has, certainly, not been very acceptable to the profession. It was most ably combated at the time, by one of the most distinguished judges of the general court, then sitting as a member of the special court of appeals which decided the cause. If it can be sustained, it is only sustainable, I think, upon grounds wholly different from those upon which the question as to the sureties for a due administration rests. Perhaps, it may be supported on the principles of the case of Goss v. Watlington, 3 Brod. & Bing. 132. 7 Eng. C. L. R. 379.* though, as Preston was in full life, even this seems difficult. In that case, the action was on a bond given by the defendant, as surety for a collector of taxes, and the books of the collector were admitted as evidence against the surety, upon the ground, that the entries were entries in a public book, which it was not reasonable to suppose a man would wantonly make against himself. In that case, however, the collector was himself dead, which was important, as may be seen by reference to the principles laid down in reference to this branch of the law of evidence. 2 Stark. Law Ev. part 2. p. 312. 3 Id. part 4. p. 1388. Such, then, being the scanty ground upon *127 which the position is sustained, which makes a verdict . ~ . against the principal conclusive against the sureties, let us see, what is the state of authority on the other side. And here, 1 shall first refer to Gordon’s adm’r v. Frederick Justices, 1 Munf. 1. where judge Tucker admits, that by our law the sureties are not concluded, though he deemed it otherwise by the euglish law; and next, I refer to the cases collected by judge Green, in Mumford v. Overseers of the Foot. From them we find, that the finding, in a scire facias on a recognizance, against a principal, is no estoppel in another scire facias against the surety; 10 Vin. Abr. Estoppel. K. pl. 17. p. 444. So, the admission of B. of the amount of goods bought by him, is not oven admissible against A. who bound himself to pay for them; 5 Esp. Cas. 26. And the admissions of partners are no evidence against each other after the dissolution, though both are bound, and both were conjunct and principals in the partnership transactions; Shelton v. Cocke, 3 Munf. 191. Rootes v. Welford, 4 Munf. 215. Now, as verdicts may bo found on the admission of a party, it would be incongruous to admit the verdict as evidence against one as to whom the admission is unavailing; so that I think we may affirm, that whore the admission of a party is not evidence against another, a verdict against him will not be so. Add to these cases, that of Goss v. Wallinglon, already cited; from which it appears, that even the receipts of the collector, though he was dead, were not admissible evidence against his surety; and we have a succession of authorities, which, though not to the very point in question, appear to decide it by necessary inference. In the case last cited, indeed, it is obvious, that chief justice Dallas considered the general rule to he, that books and receipts of the principal were not even admissible against the sureties, unless there were particular circumstances to justify their introduction. I next refer to the case of Mumford v. Overseers of the *128 Poor itself. In that case, it was decided, that a judgment against the sheriff was not conclusive evidence against his sureties, and if it went no farther would be conclusive of the point, as it was the opinion of the whole court consisting of three judges. But it is of more weight, because this very question of the administrator’s bond was discussed, and the law in relation to it declared by one of the judges, assented to by another, and not controverted by the third. The next case 1 shall mention is M'Dowell v. Burwell’s adm'r, 4 Rand. 317. In that case also, it was decided, that in an action against the sureties of a sheriff, judgments obtained against him, are not evidence against them; and to this opinion, there was an accession in the person of judge Carr, who had been appointed since the case of Mun-ford v. Overseers of the Poor was decided. In the case of Jacobs v. Hill, 2 Leigh 393. a judgment confessed by the sheriff, with the assent of the deputy, but without the knowledge of his sureties, was indeed held to be admissible evidence, but not conclusive, forjudge Carr, in delivering the opinion of the court, said that it charged the sureties, unless disproved by them. In addition to these authorities, I will refer to an elementary writer, very often cited in this court, who seems to understand the principle of evidence as to this matter, as I do. In 2 Stark. Law Ev. part 4. p. 48. it is said, that an ad-, mission by the principal is not evidence against his surety in the contract; and 3 Id. part 4. pp. 1386, 7. the same principle is again promulgated. In a note to the same page, Beall v. Beck, 3 Har. & M’Hen. 242. is cited; in which it was decided, that, in an action on a bond against the administrator of a surety, a judgment on an award against the principal, in a former action brought by him, was not evidence. So, the record of a verdict and judgment in an action on a recognizance against the principal, is not evidence against the surety; 3 Yeates 128. 16 Mass. Rep. 6. Sustained by all these *129 authorities, I cannot douht, that the salutary safeguard, which has been created for the protection of the rights of persons who axe no parties to the record, has a full application to the case of sureties in an administration bond.
But, admitting it to be true, that the verdict against the principal may avail the creditor as conclusive, the next question is, whether, in this case, he has taken the proper steps to make it so. On this point, I think, there is no room for difference of opinion. Before a jury, there is no evidence in itself necessarily conclusive. There is no evidence which may not be contradicted, except in the case of an estoppel, and even then it must be pleaded and relied on as such, or the matter will be left at large. Even a verdict between the same parties, on the same matter in controversy, must be pleaded by way of estoppel, or it will not conclude; for if they go to trial on the general issue, it will only be evidence to be weighed by the jury, and they may find against it. Vooght v. Winch, 2 Barn. &. Ald. 662. 6 Munf. 120. Hob. 206. 207. 3 East 365. 1 Wms. Saund. 325. note 4. 1 Chitty 573. 575. 617. In the case of Vooght v. Winch, a former action had been brought by the same plaintiff against the same defendant, for the same cause of action, and the defendant had a verdict. In this last action, he pleaded not guilty, and gave in evidence the record of the former verdict and judgment, insisting that it was conclusive evidence against the plaintiff, and that it operated as an estoppel. The court decided otherwise, and the plaintiff lia,d a verdict. These facts appearing upon the judge’s certificate, and the case coming on to be heard, on a rule nisi, chief justice Abbott was of opinion, that the verdict and judgment were not conclusive evidence against the plaintiff on the plea of not guilty. “ It would indeed,” says he, “ have been conclusive, if pleaded in bar to the action by way of estoppel. In that case, the plaintiff would not be allowed to discuss *130 case defendant, and for the second time to disturb and vex him by the agitation of the same ques-¿on> gut pas pieaqe(j not guilty, and thereby elected to submit his case to the jury. Now, if the former verdict was proper to be received in evidence, its effect must be left to the jury.”—“ It appears to me that the party, by not pleading the former judgment in bar, consents that the whole matter shall go to a jury, and leaves it open to them to inquire into the same upon evidence, and they are to give their verdict upon the whole evidence then submitted to them.” He then expresses his dissent to an opinion of lord Mansfield, that a former recovery need not be pleaded, but may be given in evidence on the general issue. Bayley was of the same opinion, and so was Holroyd. “A party,” says the latter, “may have matter which he may either give in evidence, or which if pleaded would be an estoppelbut when he puts it to the jury to find what the fact was, it is inconsistent with the issue which he has joined, to say that "the jury are estopped from going into the inquiry.” This case, then, shews beyond question, that to make the former verdict and judgment conclusive, even between the same parties to a subsequent action, they must be pleaded.
Let us next inquire how they must be pleaded? And here, the authorities before quoted are equally decisive, that matter of estoppel must be pleaded and relied on as an estoppel, and must have the commencement and conclusion appropriate thereto. And if they have not, the estoppel loses its effect. For estoppels are odious in law, since they conclude the party from proving, and the court and jury from deciding, according to the truth. Therefore, they must be pleaded with certainty to every intent, and in tire strictest form. And where matter of estoppel is replied, the plaintiff should rely on it, or he will lose the benefit of it, and the proper conclusion is a prayer of judgment whether the defendant ought *131 to be permitted to plead his plea. 1 Chitty 575. 616. 617. 1 Wms. Saund. 325. note 4. Nor is this mere matter of form; it is matter of substance: for the party by replying the estoppel, and relying on it, demands of the court to exclude the other party from the defence, not because it is not a good defence if true, but because after a verdict against him, he has no right to allege that it is true. Whereas if he replies the matter without relying on the estoppel, he does not demand that the plea shall be excluded, but admits it to be pleaded, and offers the former verdict as an answer to it. But answer, surely, it is none. For the plea here alleged, that the administratrix had no assets prater, and the first replication neither avoided that allegation, nor denied it, but merely set forth the finding of the fact the other way by a jury of twelve men. This was certainly not a reply, unless used as an estoppel, which it was not. I think, therefore, the court was right in rejecting the first replication to the plea, as it did not rely on the estoppel, and in no other aspect could it be regarded as a sufficient answer to the plea.
Upon the rejection of this replication, however, the plaintiff filed another, to which the defendant demurred. I am of opinion that the replication was bad; but as the demurrer was on the part of the defendant, we are carried back by it to his own plea, which if faulty must be overruled. For the party who demurs exposes himself to the disadvantage of opening all objections to any part of his own pleadings, without a similar right to revive objections, which had once been waived by him, by pleading over to those of his adversary.
We come then to the inquiry, whether the special plea of the defendant is a good plea. In substance, it is a plea that the defendant’s principal had only assets enough to pay a debt duo from Turner her testator to the estate of one Dowles, whose administrator the- testator was, in right of his wife. He had himself wasted the estate during the coverture; and the debt thus due; *132 from him to his testator’s estate, was pleaded as of superiour dignity to the plaintiff’s demand. To make this a good plea, two things must appear; 1. that Turner's estate is liable to Dowles; 2. that the debt is of supeiqour dignity, under our statute, 1 Rev. Code, ch. 104. $ 60.
As to the first, it does not appear to me to be a debateable. question. No authority can be necessary to prove, that he who by law is invested with the administration of a dead man’s estate, is responsible, if he 'wastes it or applies it to his own use; and that after his death, though the action died at common law, his representative is, in like manper, responsible, since our statute 1 Rev. Code, ch. 104. § 65. 66. The quo modo of reaching him may indeed be matter of question; and it seems to be doubted by lord Redesdale, whether there is any form of action at law, whereby the estate of a husband executor in right of his wife, can be charged in a court of law, for a waste committed by himself during the coverture. Without designing to controvert this high authority, I shall observe, that the terms of our statute appear to embrace the case, in letter as well as in spirit. It provides, that the executor or administrator of a rightful executor or administrator, by whom any waste shall have been committed, shall be chargeable in the same manner, as his testator or intestate might have been. The testator would have been liable for the waste committed, to Dowles’s estate, and therefore his executor would be. And, indeed, if the case of M’Murdo be the law of this court, the feme administratrix, perhaps, could not recover for the waste, but the creditors and legatees of Dowles could only get at the assets by suing the representative of that executor who had wasted the assets. If this be so, then there can be no difficulty in reaching Turner’s estate at law. But be this as it may, the same able chancellor just quoted, places it beyond question, that it is liable in equity; Adair v. Shaw, 1 Sch. & Lef. 243. Now, whe *133 ther the estate be chargeable at law or in equity, the representative of Turner is equally hound, in behalf of a creditor of superiour dignity, to protect the assets against any demands of inferiour dignity.
Therefore, the true question is, 2. Whether this ho a debt of superiour dignity f This depends upon the construction of our statute, the terms of which clearly comprehend the case of executors and administrators in their own right, but are supposed not to embrace the case of an executor in right of his wife. That a. man who marries an executrix or administratrix, becomes thereby executor or administrator in her right during the coverture, is a principle too familiar to require to be sustained by authority. That he and his estate should be liable for bis own acts, as she and her estate were liable before the coverture for hcr’s, and that he is bound to administer precisely as she is bound to administer, would seem to be the natural consequence of administering in her right; for by the substitution to her rights, he is not less substituted to her obligations. And as, in the event of her death, the debt from her estate to 'Dowles, would have been a debt of the first dignity, so it would seem, that in case of his death, the debt from his estate to Dowles must bo a debt of superiour dignity. The question of the dignity of the debts, is a question which does not concern the administrator, who is liable for all the assets, but cannot be made liable for more than all. It is a question which concerns the creditors of a decedent, and as between them, the la.w has chosen to give a superiority to those debts which are due to the estates of wards, lunatics, and testators or intestates. The object of that provision was to distinguish between debts, not to draw a line between the different kinds of fiduciaries. Its design was to give a superiority to debts due from executors and other fiduciaries, invested with their powers by act of law, and not to exempt one set of fiduciaries, while it was sedulously charging others. It uses very general *134 language; language which conveys the idea, that the o o ca o purpose of the draftsman was to embrace all possible cases, instead of excluding any. If, therefore, the terms of the statute were not susceptible of a construction embracing the case of the husband of an executrix, I should still think the court bound to consider the case within it, as being obviously within the mischief. How many instances of this have we ? Actions of trover are not mentioned in the 64th section of the statute of wills, yet they are considered as comprehended by it. Executors are not named in the 58th section, yet they are comprehended by it. Legatees are omitted in the same section, yet they too are embraced by its construction. So here, the object was to render the estate of every fiduciary who derived his authority from the law, liable to pay the debt due to his ward, his testator or intestate, before his own proper debt. Now, the husband did derive his authority from the law; yea, from the record. Had he pleaded ne unque executor, his plea would have been falsified by production of the letters testamentary, and proof of his marriage. Had he sued, he must have averred the fact of marriage, and made profert of the letters testamentary, as giving him his authority. It is, then, no stretch of construction, to say, that the estate of Dowles, having been before the marriage committed to Mrs. Dowles, it was upon the marriage, to be taken to be committed to the husband, since otherwise he could have no authority to administer it, or to commence and prosecute actions against its debtors. He is, in short, executor in her right, but still he is executor. Under what authority ? Under the authority of “ the court of record” which granted the administration.
I am therefore of opinion, that the plea is good. I also think the last replication to it is bad, as under all circumstances the husband’s estate is responsible for his own waste.
Judgment reversed.

 The case of Goss v. Watlington decides, only, that the hooks kept by the principal, are admissible evidence against the surety, not that they are conclusive evidence.—Reporter.